Seth Ryan Bivens
No. 16634-035
FCI Beaumont - Low
P.O. Box 26020
Beaumont, Texas 77720

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| SETH RYAN BIVENS, | ) | |
| | ) | USDC Case No. 2:16-cv- _____ |
| Movant, | ) | |
| | ) | USDC Case No. 2:13-cr-224-PM-KK-1 |
| v. | ) | |
| | ) | Hon. Patricia Minaldi, USDJ |
| UNITED STATES OF AMERICA, | ) | |
| | ) | Hon. Kathleen Kay, USMJ |
| Respondent. | ) | |

## MEMORANDUM OF LAW WITH ANNEXED EXHIBITS IN SUPPORT OF MOVANT'S PRO SE MOTION TO VACATE, SET ASIDE OR CORRECT A FEDERAL SENTENCE OR CONVICTION PURSUANT TO 28 U.S.C. §2255

[Return Date To Be Fixed By The Court]

COMES NOW SETH RYAN BIVENS Movant *pro se* in the above styled and numbered cause and respectfully submits the within Memorandum of Law in support of his Motion to Vacate pursuant to 28 U.S.C. §2255, and would show the Court the following facts, circumstances and points of law:

# I. PRELIMINARY STATEMENT

## A.   Relevant Procedural History

As an initial matter, Movant, (hereinafter "Bivens") sets out the following recitation of his procedural history for the Court's convenience:

As relevant here, on or about August 14, 2013, a grand jury seated in the Western District of Louisiana returned a multi- Count Indictment alleging variously, violations of Title 18 U.S.C. §2252A(a)(2)(A), Receipt of Child Pornography. Bivens was named in each Count.

On the advice of counsel, Bivens entered into a plea agreement (DE #26), with the government and plead guilty to the conduct alleged in Count 1. Over untimely objections (DE #39), by his attorney prior sentencing on October 16, 2014, this Court adopted the Presentence Investigation Report ("PSIR") and imposed a top of the advisory Guidelines sentence of 188 months as to Count 1 and Supervised Release of LIFE with no Fine. [1]

A timely notice of appeal was filed *pro se* (DE #50) on October 30, 2014. After various issues with acquiring transcripts and filing fees (see, USCA Case No. 15-30416), the appeal was finally dismissed by the Clerk on November 18, 2015 for want of prosecution.

---

[1]   See Docket Entry #48 ("DE"). All docket numbers hereinbefore and after are referenced to USDC Case No. 2:13-cr-224-PM-KK-1 in the District Court for the Western District of Louisiana at Lake Charles unless otherwise specified.

There was no Supreme Court petition for a writ of *certiorari*. Accordingly, the instant Motion and Memorandum of Law in Support, is timely filed pursuant to Title 28 United States Code ("U.S.C."), §2255(f)(1), collaterally attacking the judgment imposed by this Court. See, *Clay v. United States*, 537 U.S. 522 (2003).

**B.   Jurisdiction and Venue**

Bivens, invokes this Court's subject matter jurisdiction as permitted by 28 U.S.C. §2255 to entertain the motion. (Accord Rule 1(a)(1) & (4), Rules Governing §2255 proceedings). His claims are both timely and cognizable and therefore proper for merits consideration. See, *Massaro v. United States*, 538 U.S. 500, 509 (2003), and *Clay v. United States, supra.* Bivens is currently in the custody of the United States Attorney General and is incarcerated at the Federal Bureau of Prisons ("B.O.P.") Federal Correctional Institution located in Beaumont, Texas. His physical confinement is not shared with the public generally and stems from his conviction and sentence imposed before this Court. See generally, *Jones v. Cunningham,* 371 U.S. 236, 249 (1963).

The instant Motion alleges that:

[1].   The sentence and conviction were imposed in violation of the Constitution or laws of the United States;

[2].   The sentence imposed is otherwise open to collateral attack because:

(a). It violates Movant's 5th and 6th Amendment protections under the Constitution of the United States; (b). involves a fundamental defect that

resulted in an incorrect application of the advisory guidelines in this Court's determination of the sentence imposed; (c). the errors complained of are inconsistent with the rudimentary demands of fair procedure; and, (d). have resulted in grounds for alleging ineffective assistance of counsel pursuant to Movant's 6th Amendment protections under the Constitution of the United States.

## C.   Application of the Liberal Construction Doctrine

As a *pro se* petitioner incarcerated in federal prison and without the benefit of formal training as an attorney, Bivens is entitled to and contemporaneously invokes the full measure of the liberal pleading and construance doctrine first expressed in Estelle v. Gamble, 429 U.S., 97 (1976). The doctrine obliges this Court to apply the law liberally and with a duty of construance under any provision or practice, which would be most beneficial for the relief being sought regardless of couching by the *pro se* pleader. As a result of Bivens' *pro se* status, the instant Motion and Memorandum of Law must be held to less stringent standards than those drafted by attorneys. See, *Haines v. Kerner,* 404 U.S. 519 (1972) and *Johnson v. Quarterman,* 479 F.3d 358 (5th Cir. 2007). Further, the allegations raised herein must, be taken as true and consequently construed in light most favorable to his position in any issue not specifically rebutted or which may be procedurally waived or forfeited by Respondent ("government").

-4-

## II. GROUNDS, ERRORS & ARGUMENT IN SUPPORT OF RELIEF

A.    **Initial Procedural Statement**

Bivens proceeds with the instant action collaterally attacking the convictions and sentences imposed by this Court. He concedes, as he must, that in general terms, issues not raised pretrial, at trial or on direct appeal are subject to the procedural default doctrine. Bivens further acknowledges that he must show both cause for his failure to assert his claims in an earlier proceeding, and the actual prejudice that flows from each alleged error. He contemporaneously advances that such a showing of cause and prejudice is not required if: (1) he seeks relief on any issue based on facts not developed at trial which should be considered to avoid a fundamental miscarriage of justice; (2) the government fails to object to the consideration of newly raised issues, or (3) the motion raises certain constitutional claims that may be adequately addressed only on collateral review. See, *United States v. Frady*, 456 U.S. 152, 162-66 (1982); *United States v. Shaid*, 937 F.2d 228 (5th Cir. 1991); *Massaro v. United States*, 538 U.S. 500 (2003); *United States v. Gordan*, 346 F.3d 135 (5th Cir. 2003); *McClesky v. Zant*, 499 U.S. 467 (1991); *Rodriguez v. Johnson*, 104 F.3d 694, 697 (5th Cir. 1997); *United States v. Story*, 439 F.3d 226, 231 (5th Cir. 2006); and, *United States v. Dula*, 989 F.2d 772, 775-76 (5th Cir. 1993), respectively.

B.    **Controlling Precedent for Ineffective Assistance of Counsel Claims**

The benefit of raising ineffective assistance of counsel ("IAC") claims on collateral review is that, as here, Bivens can expand the scope of those claims. Otherwise, the law of the case doctrine would prevent him from pointing to any of his attorney's errors in a collateral attack and thwart the purpose of §2255, by precluding claims that his attorney's performance was constitutionally deficient and "fell below an objective standard of reasonableness.". *Williams v. Taylor,* 529 U.S. 362, 390-91 (2000); *Darden v. Wainwright,* 477 U.S. 168, 184 (1986); *Strickland v. Washington,* 466 U.S. at 687-88; *Lackey v. Johnson,* 116 F.3d 149, 152 (5th Cir. 1997); and, *Andrew v. Collins,* 21 F.3d 612, 621 (5th Cir. 1994).

C.    **Claimed Errors & Grounds for Relief**

**First Claimed Error**: Counsel was ineffective for failure to timely file a Notice of Appeal after specific assurances  and clear indication by Bivens and his family an appeal was what they expected;

**Second Claimed Error**: Counsel was ineffective for failing to review PSIR with Bivens prior to sentencing and then perjured himself before this Court;

**Third Claimed Error**: Counsel was ineffective at sentencing for failure to re-lodge objections or argue meaningfully in mitigation of sentence;

**Fourth Claimed Error**: Counsel was ineffective at sentencing for failure to challenge over broad and unreasonable conditions of Supervised Release;

**Fifth Claimed Error:** Bivens asserts a facial challenge to §2G2.2, United States Sentencing Guidelines ("USSG"), as cruel and unusual punishment under the Eighth Amendment to the Constitution.

[1].   **First Claimed Error and Argument in Support of Grounds For Relief**

It is well settled that persons convicted in federal district courts have a right to direct appeal. *Coppedge v. United States*, 369 U.S. 438 (1962). Additionally, the Sixth Amendment right to counsel extends to direct appeals. *Douglas v. California*, 372 U.S. 353 (1963). This Circuit, as with all others, long ago held that those whose right to appeal has been frustrated should be treated exactly like any other appellants; they should not be given an additional hurdle to clear just because their rights were violated at some earlier stage of the proceedings. "[A] criminal defense attorney's failure to file a notice of appeal when requested by his client deprives the defendant of his Sixth Amendment right to the assistance of counsel, notwithstanding that the lost appeal may not have had a reasonable probability of success." *United States v. Rivas*, 450 Fed. App'x. 420 (5th Cir. 2011).

Moreover the Supreme Court has long held that "a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Rodriquez v. United States*, 395 U.S. 327 (1969). This is true *even when a defendant has waived his right to a direct appeal and collateral review*, such as through a waiver clause in a plea agreement. *United States v. Tapp*, 491 F.3d 263, 265–66 (5th Cir.2007). The Supreme Court has also held that the reasonableness inquiry established in *Strickland* requires this Court to engage in a circumstance-specific review of the facts of the particular case. *Roe v. Flores-Ortega*, 528 U.S. at 477–78. Because the facts of each case are

different, this Circuit has avoided a bright line rule requiring criminal defense counsel to perfect an appeal in every criminal conviction. *White v. Johnson*, 180 F.3d 648, 652 (5th Cir.1999). Thus, when a criminal defendant fails to inform his counsel in a timely manner that he wishes to appeal, counsel's failure to file a notice of appeal may not be professionally unreasonable. *See, Childs v. Collins*, 995 F.2d 67, 69 (5th Cir.1993) (affirming the denial of defendant's ineffective assistance of counsel claim when the defendant failed to communicate any indication of his desire to appeal his conviction during the three-month period between his sentencing and the filing of his habeas petition).

However, when a defendant definitively and timely notifies his counsel that he wishes to appeal and counsel does not file a notice of appeal, we presume that counsel's performance was unreasonable "because a defendant who instructs counsel to initiate an appeal reasonably relies upon counsel to file the necessary notice." *Flores-Ortega*, 528 U.S. at 478. This is so because "filing a notice of appeal is a purely ministerial task, and the failure to file reflects inattention to the defendant's wishes." *Id.*

In addition to considering whether a defendant has clearly communicated a desire to appeal and whether such communication was made in a timely manner, this Circuit also considers whether counsel "fully inform[ed] the defendant as to his appellate rights." *White*, 180 F.3d at 652. To meet his constitutional duty, counsel must do more than simply give the defendant notice "that an appeal is available or advice that an appeal may be

unavailing." *Id.* Instead, counsel must advise the defendant "not only of his right to appeal, but also of the procedure and time limits involved and of his right to appointed counsel on appeal." *Id.* (quoting *United States v. Faubion,* 19 F.3d 226, 231 (5th Cir.1994). *Failure to provide such advice is constitutionally deficient performance under Strickland. Id.*

Thus, the determination of whether counsel properly advised his client about the decision to appeal is a nuanced inquiry. When counsel is unaware as to whether a defendant wishes to appeal, this Court must consider "whether counsel's failure to consult with the defendant itself constitutes deficient performance." *Flores-Ortega,* 528 U.S. at 478.

As defined by the Supreme Court, the term "consult" conveys a specific meaning: "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Id.* The Court has further stated that counsel has a constitutional duty to consult with the defendant about an appeal "when there is reason to think either (1) *that a rational defendant would want to appeal ...* or (2) *that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." Id.* at 480 (Emphasis added). When making this determination, this Court must take into account all the information that counsel knew or should have known. *Id.* Only by considering all relevant factors in a given case can a court properly determine whether a rational defendant would have desired an appeal or that the particular defendant sufficiently demonstrated to counsel an interest in an appeal.

Here, two facts are readily evident which clearly demonstrate that Bivens reasonably wanted to appeal. First, his attorney unequivocally told family after sentencing that he wanted to think about whether to appeal or file a motion to reconsider (the sentence) with this Court. Clearly, there was no basis for "reconsideration" of the sentence imposed at that procedural juncture and equally clear, the statement was misleading and prejudicial. Indeed, when emailed by Bivens' sister on October 23, 2014, she stated: "[t]oday is Thursday and we only have 7 days to decide if we are going to file an appeal or send Judge Minaldi a letter of reconsideration .... I still haven't heard back from you on either." (See, **Exhibit #1**; Sworn Declaration of Lisa Clement. Attached hereto and incorporated by reference herein. All of this and not a single consultation with Bivens whatsoever.

Second, this negligence would lead to a series of events undertaken by Bivens proceeding *pro se* in order to attempt to get an appeal perfected. All to no avail. (See, USCA Case No. 15-30416). More to the point and largely relevant here, a criminal defense attorney is obligated to follow his client's wishes with regard to those fundamental issues that must be personally decided by the client. As to those issues - pleading guilty, waiving a jury, taking the stand, and appealing a conviction or sentence "an attorney must both consult with the defendant and obtain consent to the recommended course of action." *Florida v. Nixon*, 543 U.S. 175, 187 (2004). See also, *Jones v. Barnes*, 463 U.S. 745, 751 (1983); and *Wainwright v. Sykes*, 433 U.S. 72, 93 (1977).

In *Nixon*, the Supreme Court expressly recognized counsel's "*duty to consult with the client regarding important decisions*" as independent from the duty to both consult with the client and obtain his consent on fundamental decisions. *Id.* at 187 (Emphasis added). Indeed, counsel's function in representing a criminal defendant is to *assist* the defendant, which includes the *overarching duty to advocate the defendant's cause* and the more particular duties to consult with the defendant on important decisions and to keep him informed of important developments in the course of the prosecution. (It appears that this Circuit has not yet reached or decided the full application of *Florida v. Nixon*). To satisfy the Sixth Amendment right to the assistance of counsel, that assistance must be effective. *McMann v. Richardson,* 397 U.S. 759, 771, n.14 (1970). Accordingly, there are at least three types of decisions where counsel's failure to seek or follow his or her client input before acting results in constitutionally ineffective assistance: (1) fundamental decisions requiring informed consent of the client; (2) important decisions requiring consultation with the client; and, (3) decisions where the client has expressly instructed counsel on a particular course. *Nixon* 543 U.S. at 187. Each of these requirements is in the main here with the operative factors being "decisions requiring consultation" and "where the client has expressly instructed counsel on a particular course." Absent something unknown to Bivens under these circumstances the decisions of his attorney cannot be passed off as "sound strategy" and must be assessed as ineffective assistance.

-11-

Bivens asserts his attorney was negligent, he seeks a finding of-ineffective assistance of counsel and respectfully requests that this Court vacate its Judgment of October 23, 2014, appoint CJA counsel and restart his appeal clock. Alternatively, the Court should set a time and date certain for an evidentiary hearing that this claim may warrant.

[2]. <u>Second Claimed Error and Argument in Support of Grounds For Relief</u>

Very clearly Rule 32, Fed. R. Crim. P. imposes certain requirements on not just the Court and government but defense counsel as well. Most particularly 32(f)(1)-(3) and (i). Relevant here, Bivens' attorney wholly failed to discuss the PSIR on any level. Notwithstanding the ill conceived and late objections filed by his attorney disguised as a motion for a downward departure (DE #39), which garnered a responsive motion from the government to revoke Bivens'Acceptance of Responsibility points (DE #40), and admonishment from the Court that objections were due "fourteen days after defense counsel received the objections mailed on December 26, 2013,"were now some eight (8) months late and "warn[ed] counsel that late filings will not be considered in the future."(DE #45). Bivens' attorney did nothing in his clients interest including showing up on sentencing day late and forcing the Court to postpone proceedings to accommodate him. (See, **Exhibit #1** and **Exhibit #2**; Sworn Declaration of Kandy Bivens Benoit).

Perhaps most remarkable, when queried by the Court as to whether he had discussed the PSIR with Bivens and did counsel feel that he understood it, Bivens' attorney

-12-

outright perjured himself by answering in the affirmative each time. (See, **Exhibit #1 and Exhibit #3**; Sworn Declaration of Seth Bivens). Bivens seeks a finding of IAC as to this allegations or alternatively an evidentiary hearing is in order for this Court to make credibility determinations the claim evokes.

[3]. <u>Third Claimed Error and Argument in Support of Grounds For Relief</u>

As addressed above, and emblematic of how his attorney handled Bivens' case, without discussion or consultation in any manner, his attorney filed a "Motion for Departure" (DE #39), which accomplished the two things noted above. Yet more importantly, the Court's Memorandum ruling gave fair notice to Bivens' attorney that it intended to essentially adopt the PSIR with its enhancements largely intact. This, some two weeks *prior* to sentencing, yet even armed with this knowledge, it appears his attorney abandoned Bivens at sentencing. This may be due to the fact that he was late and clearly unprepared for the hearing. In any event, Bivens asserts that which rises to the level of IAC, was his attorney's failure to re-engage objections to the fifteen (15) points of enhancements his client was facing which effectively tripled Bivens' sentencing exposure. This failure, notwithstanding the uncontested serious misrepresentations contained in the Simoneux Report [2]and being told by the Court that it could go even worse for Bivens if forced to

---

[2]   Relevant here is the government's highly questionable involvement and counsel's apparent acquiescence in what should have been an independent evaluation that was clearly paid for by his family and for unexplained reasons seemingly tied to Bivens' plea agreement. (See, **Exhibit #4**). This also begs the ethical question of Dr. Simoneaux's willing

review the "evidence" led him to withdraw all objections leaving Bivens turning in the

wind. (See, **Exhibit #5**; Sworn Declaration of Betty LeJeune). See also, *Jones v. Cain*, 227 F.3d

228, (5th Cir. 2000); *and United States v. Williamson*, 183 F.3d 458 (5th Cir. 1999)(Vacated and

Remanded)(holding that reasonable attorney, for purposes of claim of ineffective assistance

of counsel, has obligation to research relevant facts and law, or make an informed decision

that certain avenues will not prove fruitful. Solid meritorious arguments based on

controlling precedent should be discovered and brought to the court' attention)).

Because this failure alone is almost immeasurable in the damage leveled at Bivens,

he seeks a finding of IAC and an evidentiary hearing should the Court decide further

credibility determinations are necessary as to this claim.

[4].   **Fourth Claimed Error and Argument in Support of Grounds For Relief**

Although completely ignored by his attorney at sentencing, the onerous special

conditions of Supervised Release imposed on Bivens were essentially unopposed and

without comment by either side. Specifically, Bivens asserts the ban on computer

access and prohibition or contact with anyone under the age of 18 (See, DE #48 at p.

4; #4 and #6) cannot stand.

Bivens concedes as he must that a district court has wide discretion in imposing

terms and conditions of supervised release. However, this discretion is limited by 18

U.S.C. §3583(d), which provides that a court may impose special conditions of

participation and unusual meeting or discussions with the government *prior* to his
evaluation of Bivens.

-14-

supervised release only when the conditions meet certain criteria. First, special conditions of supervised release must be reasonably related to the factors set forth in §3553(a)(1), (a)(2)(B), and (a)(2)(C-D). These factors include: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant," (2) the need "to afford adequate deterrence to criminal conduct," (3) the need "to protect the public from further crimes of the defendant," and (4) the need "to provide the defendant with needed [training], medical care, or other correctional treatment in the most effective manner."In addition, supervised release conditions cannot involve a greater deprivation of liberty than is reasonably necessary to achieve the latter three statutory goals. See 18 U.S.C. § 3583(d). Yet, based on the conditions imposed here, it cannot fairly be said that there has not been a greater deprivation than necessary considering it is for the rest of Bivens' life. See, United States v. Wood, 547 F.3d 515, 519 (5th Cir. 2008); United States v. Salazar, 743 F.3d 445, 452 (5th Cir. 2014). See also, United States v. Duke, 788 F.3d 392, 398 (5th Cir. 2015)(holding: special condition prohibiting defendant from access to any computer capable of internet access violated statutory requirements and lifetime ban on association with minors was overly broad). As a result of his attorney's failure to recognize, challenge or otherwise object to the these clearly over-broad and unreasonable conditions of Supervised Release Bivens seeks a finding of ineffective assistance of counsel.

### [5].   Fifth Claimed Error and Argument in Support of Grounds For Relief

As noted by the Supreme Court in the *Weems* Case (217 U.S. 349 (1910)), "what

constitutes a cruel and unusual punishment has not been exactly decided," is as true at present as it was then. More recent jurisprudence seems to have moved closer to a definition which suggests that under all circumstances a particular punishment is cruel and unusual when it is of such character as to shock general conscience or to be intolerable to fundamental fairness and must be made in light of developing concepts of elemental decency. Thus, as applied to sentences imposed after criminal conviction, the Eight Amendment forbids extreme sentences that are "grossly disproportionate" to the crime. A punishment will be found to be cruel and unusual where the punishment inflicted is so severe that it is disproportionate to the crime. In the not too distant past, the Supreme Court opined that a court must refer to evolving standards of decency that mark the progress of a maturing society when determining which punishments are so disproportionate as to be "cruel and unusual," within the meaning of the Eighth Amendment prohibition. See, *Roper v. Simmons,* 543 U.S. 551 (2005).

As regards the instant claim and case, there is an ever growing number of judges and commentators who believe the U.S. Sentencing Guidelines governing child pornography offenses to be flawed in ways, such as here, that lead to disparately harsh sentences. Primarily, the notion that these particular guidelines are "seriously flawed" is gaining traction in courts all over the country. This conclusion about the history of the child

pornography guidelines is supported by both the Stabenow article [3] and the Commission's

own 2009 report to Congress. Although the report states that the Commission's effort

"reviewed sentencing data, considered public comment on proposed amendments,

conducted public hearings, studied relevant literature, and considered pertinent legislative

history," it is equally clear from the report that the Commission was constantly reacting to

Congress' repeated directives, and the penalties for child pornography offenses were

steadily and dramatically increasing. As noted by the Third Circuit in *Grober*:

> "The result is a Guidelines provision where, as the Commission
>
> found, if the base offense level was any higher, the typical
>
> offender sentenced for receipt of child pornography would face
>
> a higher Guidelines range than the typical offender convicted
>
> of conspiracy to commit murder and kidnaping."

Clearly the amendments that Congress ordered without consulting the Sentencing

Commission have been described as "the most significant effort to marginalize the role of

the Sentencing Commission in the federal sentencing process since the Commission was

created by Congress." As described in the Commission's 2009 Report and discussed by the

Second Circuit in *Dorvee*, and by now, numerous district courts across the country, relevant

---

[3]

  See, Deconstructing the Myth of Careful Study: A Primer on the Flawed Progression of
the   C h i l d   P o r n o g r a p h y   G u i d e l i n e s   A v a i l a b l e   a t
http://wwwfd.org/pdf_lib/child%20porn%20july%20revision.pdf; See also, Judge Jack
Weinstein's opinion in *United States v. Polizzi*, 549 F. Supp. 2d 308, 365 (E.D.N.Y. 2008).

sections of the Guidelines were not developed pursuant to the Commission's institutional role, nor based on empirical data and national experience, but instead was developed largely pursuant to Congressional directives. Even though the guideline took effect November 1, 1987, it has been amended 11 times. As originally promulgated, it applied only to trafficking offenses. Effective November 1, 2004, the Commission combined this guideline with §2G2.4 and it now applies to trafficking and possession offenses.  As one district court put it, "the Commission probably did the best it could under difficult circumstances, but to say that the final product is the result of Commission data, study and expertise simply ignores the facts."  Perhaps recognizing this anomaly of the guidelines, this Circuit has acknowledged the acceptance of downward variances in cases such as Bivens'. See, *United States v. Rowan*, 530 F.3d 379, 381 (5th Cir. 2008)(departing downward to sentence of 60 months probation with recommended guidelines range of 46-57 months on first offense); *United States v. Duhon*, 541 F.3d 391, 399 (5th Cir. 2008)(affirming downward variance to 60 months probation on recommended guideline range of 27-33 months).

Bivens advances a facial challenge to §2G2.2, as unconstitutional under the Eighth Amendment and rendering sentences which as defined, are cruel and unusual punishment, as well as grossly disproportionate to the underlying offense. Any combination of the possible 54 (15 in the instant case), additional offense points under §2G2.2(b) with a base

offense level of 18 or 22, leaves sentencing exposure far beyond life imprisonment on the USSG Sentencing Table, even for a first time offender. No other section of the Guidelines, or even applicable statutes offers anything in comparison. Bivens seeks a finding that §2G2.2 is unconstitutional.

### III.

**A.**     <u>Application of Controlling Precedent to Bivens Claimed Errors</u>

The right to assistance of counsel encompasses the right to *effective* assistance of counsel. See, *McMann v. Richardson,* 397 U.S. 759, 771, n.14 (1970). See also, *Burdine v. Johnson,* 262 F.3d 336, 344 (5th Cir. 2001)(The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel at every critical stage of the proceedings against them). A party claiming ineffective assistance of counsel bears the burden of showing (1) that his counsel's performance fell below objective standards for reasonably effective representation (*United States v. Franks,* 230 F.3d 811 (5th Cir. 2000), and (2) that this deficiency prejudiced him). See, *Strickland v. Washington,* 466 U.S. 668, 688-94 (1984); and *Bousley v. United States,* 523 U.S. 614 (1998).

To satisfy the first prong, Bivens must direct this court to specific acts or omissions of his counsel. The Court must then consider whether in light of all of the circumstances counsel's performance fell outside the range of professionally competent assistance. To satisfy the second prong, Bivens must show that there is a reasonable probability that, but

for counsel's unprofessional errors, the result of the proceedings would have been different. *Strickland's* reasonable probability language does not require Bivens to meet a preponderance of the evidence threshold, but it does require him to show 'a reasonable probability sufficient to undermine confidence in the outcome. See, *Jones v. Cain*, 227 F.3d 228, (5th Cir. 2000); *and United States v. Williamson*, 183 F.3d 458 (5th Cir. 1999). See also, *Lockhart v. Fretwell*, 506 U.S. 364 (1993)(making clear that the probable effect of counsel's deficient performance on the outcome of the sentencing process is not the end of the inquiry. The court must also determine whether the deficient performance led to a result that was "fundamentally unfair";*Williams v. Taylor*, 529 U.S. 420 (2000)(explaining that *Lockhart* did not replace *Strickland*, and when counsel's deficient performance deprived the defendant of a substantive or procedural right, the prejudice prong of *Strickland* has been met); and *Glover v. United States*, 531 U.S. 198 (2001)(ruling that any increase in the length of incarceration because of counsel's deficient performance constitutes "prejudice")).

[1].   **Ineffective Assistance of Counsel Burden Met**

Under these requirements, Bivens submits that by a preponderance of the evidence, he has shown that his attorney's performance fell below objective standards for reasonably effective representation and in fact, was tantamount to no representation at all in certain claimed errors. Bivens submits that he has clearly demonstrated in each of his claims that

but for those errors, his sentence and even conviction would have been different (less). He has established prejudice, and as such, met his burden.

**B.   Relief Requested**

Bivens respectfully requests that this Court consider the merits of each claim in context and provide the proper findings of fact and conclusions of law after an evidentiary hearing has concluded which may be contemplated to assist in deciding the allegations advanced and making necessary credibility determinations. *United States v. Culverhouse,* 507 F.3d 888, 895 (5th Cir. 2007)(hearing required to determine whether counsel performed deficiently in failing to raise objections to district court's findings); *United States v. Phillips,* 210 F.3d 345, 348 (5th Cir. 2000); *United States v. Franks,* (supra). Where the allegations of a motion to vacate are not negated by the record, the district court is required to hold an evidentiary hearing to decide all unresolved factual allegations, which, if true, might support Bivens' constitutional claims. *United States v. Briggs,* 939 F.2d 222, 225 (5th Cir. 1991). Bivens seeks a finding of ineffective assistance by his attorney, that the judgment of this Court be vacated and his appeal clock restarted. Alternatively, he seeks an evidentiary hearing or resentencing at the Court's earliest convenience.

**C.   Prayer**

WHEREFORE, PREMISES considered and for good cause shown, Movant SETH RYAN BIVENS respectfully requests that the Motion as is herein above set forth and

described, be in all things GRANTED, or such other and further relief that this court deems

appropriate.

Dated: November ____ 1____, 2016

Respectfully submitted,

By: _____

Seth Ryan Bivens

No. 16634-035

FCI Beaumont - Low

P.O. Box 26020

Beaumont, Texas 77720

## DECLARATION

I.    Seth Ryan Bivens  herein declare under penalty of perjury that I am the

Movant *pro se* in the above stated matter and that the foregoing is true and correct based

upon information and belief and not willfully false. I make this declaration pursuant to 28

U.S.C. §1746 this __1__ day of November, 2016.

By: _____
    Seth Ryan Bivens


## CERTIFICATE OF SERVICE

I herein certify that one original and two copies of the foregoing  Memorandum of

Law with appended Exhibits were sent via first class mail with postage prepaid and affixed

thereon this __6__ day of November, 2016, by placing same in the United States mail to the

Clerk of the Court for the Western District of Louisiana at Lake Charles, pursuant to the

holdings of *Houston v. Lack.*

By: _____
    Seth Ryan Bivens

-23-